UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| FAEZEH RAZJOUYAN,<br><br>    Plaintiff,<br><br>vs.<br><br>ST. LOUIS UNIVERSITY,<br><br>Serve at:<br>221 N GRAND BLVD<br>ST LOUIS, MO 63103<br><br>    Defendant. | )<br>)  Cause No:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff Faezeh Razjouyan, M.D., by her attorneys, and for her Complaint against Defendant St. Louis University states as follows:

## INTRODUCTION

1. This matter arises under Title VII of the Civil Rights Act as amended, 42 U.S.C. §2000e et. seq., and Missouri common law. Plaintiff Razjouyan was subjected to sex discrimination during her employment at Defendant St. Louis University. She reported and complained of discrimination at St. Louis University School of Medicine. Consequently, Defendant engaged in retaliatory actions, resulting in the constructive discharge of Plaintiff's employment. Defendant also made false, defamatory statements about Plaintiff.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331, 1343(a) and 42 U.S.C. §2000e-5 to hear and decide claims under federal law.

1

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 to hear and decide other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and 42 U.S.C. §2000e-5(f)(1)(B)(3) because all events giving rise to this action occurred within the Eastern District of Missouri.

5. On October 23, 2024, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission alleging sex discrimination and retaliation.

6. On May 15, 2025, Plaintiff received the Notice of Right to Sue from the Department of Justice Civil Rights Division for the claims contained in her charge. See Exhibit 1 attached hereto.

7. Plaintiff now files this Complaint within 90 days of receipt of that notice.

8. Plaintiff has complied fully with the administrative exhaustion requirements of Title VII.

## PARTIES

9. Plaintiff Dr. Faezeh Razjouyan is a physician and a female resident of Missouri.

10. Plaintiff resides in St. Louis County, Missouri, which is located within the Eastern District of Missouri.

11. Defendant St. Louis University School of Medicine is an organization or corporation providing medical training and other education in the state of Missouri. Defendant can sue and be sued and is located in St. Louis, Missouri.

12. Defendant employed the Plaintiff at 1201 S Grand Blvd, St. Louis, MO 631041.

13. All facts giving rise to this cause of action occurred in St. Louis, Missouri.

## FACTS APPLICABLE TO ALL COUNTS

14. On November 1, 2022, Plaintiff began her employment as an Interventional Radiology Fellow at Defendant St. Louis University School of Medicine. Plaintiff remained in that role until her constructive discharge on April 26, 2023.

15. During her employment, Plaintiff reported to Dr. Kirubahara Vaheesan, the Section Chief and Program Director. Plaintiff also reported to attending physicians in the department on a day-to-day basis.

16. During her employment, Plaintiff performed her job duties in a satisfactory manner.

17. When Defendant hired Plaintiff as a fellow, Defendant paid Plaintiff a step below the amount her experience typically received.

18. Defendant continued to pay Plaintiff at that lower amount throughout her employment.

19. During Plaintiff's employment, Dr. Vaheesan and other attendings yelled at Dr. Razjouyan, belittled her abilities, and were aggressive towards her.

20. On one or more occasions during Plaintiff's employment, attendings who supervised Plaintiff made inappropriate and/or sexist comments.

21. On or about November 18, 2022, the attending Dr. David Owens forced Plaintiff to place a chest port in a patient when Plaintiff's license was still pending. Dr. Owens shouted at her that he was an attending and that Plaintiff needed to be subordinate. Dr. Owens told Plaintiff to follow his order and "be a good little girl." A few minutes into the procedure, Dr. Owens cursed

3

and snapped at Plaintiff, "I don't give a shit you trained at Penn or Emory. You need to do things my way, SLU's way. Get the fuck out of here. Get out."

22. On or about November 29, 2022, the attendings Dr. Jerome Kao and Dr. Keith Pereira asked Plaintiff to do a procedure on a patient while Plaintiff's training license was still pending. Dr. Kao said he had not done the procedure and since Plaintiff had performed the procedure before, he asked Plaintiff to show him how to perform the procedure.

23. Plaintiff protested that she did not yet have her training license. Kao told Plaintiff he was the attending and she had to follow his instruction.

24. On information and belief, the OR nurse reported Plaintiff to Dr. Matt Broom, the SLU Chief Medical Officer (CMO).

25. Dr. Keith Pereira told Plaintiff to lie to Dr. Matt Broom and tell him she never "touched" a patient and was just observing.

26. On or about November 29, 2022, Dr. Keith Peirera told Plaintiff to omit information about the procedures she performed when reporting to the Board of Healing Arts when she was not licensed yet.

27. On one or more occasions during Plaintiff's employment, Dr. Xavier Packianathan told Plaintiff that a woman's job is to "be in the kitchen."

28. On one or more occasions during Plaintiff's employment, Dr. Packianathan and Dr. Vaheesan called Plaintiff their "slave."

29. On more than one occasion, Dr. Packianathan ordered Plaintiff to leave a procedure.

30. On one or more occasions during Plaintiff's employment, Dr. Vaheesan made false statements regarding Plaintiff, including the following:

4

      A.     Dr. Vaheesan told one or more staff members that Plaintiff had short gut syndrome;

      B.     Dr. Vaheesan told one or more staff members that Plaintiff never finished her residency at Emory University; and

      C.     Dr. Vaheesan told one or more staff members that Plaintiff left her program at Penn University after only six months.

31. Dr. Vaheesan knew or should have known the above statements were false.

32. Dr. Vaheesan's statements denigrated Plaintiff's qualifications and/or abilities.

33. Dr. Vaheesan's statements damaged Plaintiff's reputation.

34. Dr. Razjouyan reported and complained of sex discrimination and harassment to Defendant.

35. On or about December 6, 2022, Plaintiff reported and complained of sex discrimination and harassment to Defendant. Plaintiff met with the Graduate Medical Education House Staff Coordinator, Rosie Williams, and reported the discrimination and harassment she had experienced.

36. Williams recommended that Plaintiff contact the Office of Professional Oversight.

37. Defendant failed to take any effective remedial action to prevent or stop the discrimination.

38. After Plaintiff's complaints, Dr. Razjouyan's supervisors continued to belittle her abilities and falsely accused her of bad performance or communication.

39. In or about February 2023, Plaintiff reported and complained of discrimination and harassment to Lisa Israel from the Professionalism Office.

5

40. Israel requested a written statement, but Plaintiff declined because she feared retaliation.

41. Defendant failed to take any effective remedial action to prevent or stop the discrimination.

42. On or about March 20, 2023, Plaintiff again contacted Rosie Williams about continued issues with discrimination and harassment from Dr. Vaheesan and other male attendings.

43. Plaintiff also contacted Dr. Ghalaza Hayat at the GME office to discuss her concerns and the harassment she had suffered.

44. Dr. Hayat recommended that Plaintiff keep quiet and not discuss the issues with anyone.

45. The next day, on or about March 21, 2023, Defendant issued a remediation (a form of written discipline) for Plaintiff.

46. Defendant falsely accused Plaintiff of walking out of a procedure in an unprofessional manner.

47. Defendant's actions interfered with Plaintiff's ability to perform her job responsibilities.

48. Defendant's actions altered the terms and conditions of Plaintiff's employment.

49. Defendant's actions constituted a hostile work environment for Plaintiff.

50. In or about March 2023, Defendant placed Plaintiff on leave.

51. Dr. Vaheesan told Plaintiff her leave was a punishment.

52. During her leave, Plaintiff met with Dr. Gammack and Lisa Israel. They discussed the harassment and sexism that Plaintiff had previously reported.

53. Gammack and Israel suggested in the meeting that they move Plaintiff to the Interventional Nephrology Department. Gammack and Israel expressed that the switch would help prevent Plaintiff from meeting with the Accreditation Council for Graduate Medical Education (ACGME) site visit for accreditation that was to occur on April 13, 2023.

54. Gammack told Plaintiff she granted the leave of absence for Plaintiff to de-stress and that she could return when they sorted out the switch to another department.

55. On or about April 26, 2023, Plaintiff was constructively discharged from her employment due to Defendant's actions.

56. Later in the Summer of 2023, Dr. Hayat told Plaintiff that Gammack had built a strong case against her, told her to be a "good girl," and that it was in Plaintiff's best interest to pack and leave St. Louis and forget about medicine altogether.

57. After Plaintiff's constructive discharge in April 2023, Defendant falsely answered "Yes" to the question from the Missouri Board of Healing Arts: "Do you have knowledge of any condition or impairment which in any way affects the applicant's ability to practice in a professional competent and safe manner, including but not limited to: (1) a mental, emotional, nervous or sexual disorder; (2) an alcohol or substance abuse disorder or (3) a physical disease or condition?"

58. Defendant knew or should have known that Dr. Razjouyan had no such condition or impairment.

59. Defendant's representations to the Missouri Board of Healing Arts created a roadblock for Dr. Razjouyan's application for a license to practice medicine in Missouri.

7

60. Defendant has also made false and misleading statements to one or more prospective employers about Dr. Razjouyan, including falsely stating that Dr. Razjouyan had anger issues, did not get along with people, and had problems with professionalism.

61. Defendant's statements to one or more prospective employers have hindered Plaintiff from obtaining gainful employment.

62. On information and belief, on at least one occasion, Defendant's false statements led a prospective employer to retract an offer of employment.

63. Defendant's misconduct as outlined above was undertaken with malice, willfulness, and reckless indifference to the rights of others.

## VIOLATIONS OF LAW

### Count I: Title VII – Sex Discrimination

64. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

65. Plaintiff is an employee as defined by 42 U.S.C. § 2000e(f)

66. Defendant is an employer as defined by 42 U.S.C. § 2000e(b).

67. Defendant took negative employment actions against Plaintiff during her employment, as described above. As described above, Defendant discriminated against Plaintiff due to her sex by subjecting her to sexist comments, harassment, belittling, false claims, discipline, and reprimands.

68. Plaintiff's sex was a motivating factor in Defendant's actions against her.

69. As described above, Defendant, through its officers, employees, and agents, engaged in intentional sex discrimination in the terms and conditions of Plaintiff's employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

70. Defendant St. Louis University School of Medicine's actions have caused Plaintiff Razjouyan to suffer lost compensation and benefits of employment.

71. Defendant St. Louis University School of Medicine's actions have caused Plaintiff Razjouyan to suffer emotional distress and mental anguish.

72. Defendant St. Louis University School of Medicine's actions have caused Plaintiff Razjouyan to incur costs and attorneys' fees.

73. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, awarding lost wages and benefits, front wages and/or reinstatement, emotional distress damages, compensatory damages, punitive damages, pre-and-post judgment interest, and attorney's fees and costs, as well as any other relief that this Court should find necessary and proper.

### Count II: Title VII – Retaliation

74. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

75. Plaintiff is an employee as defined by 42 U.S.C. § 2000e(f)

76. Defendant is an employer as defined by 42 U.S.C. § 2000e(b).

77. As described above, Defendant engaged in intentional sex discrimination in the terms and conditions of Plaintiff's employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

78. During her employment, Plaintiff complained of sex discrimination and/or harassment based on sex to Defendant St. Louis University School of Medicine.

9

79. Plaintiff's complaints constituted protected activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

80. In response to Plaintiff's complaints, Defendant engaged in additional discrimination and harassment, which led to the constructive discharge of Plaintiff's employment.

81. After Plaintiff's constructive discharge in April 2023, Defendant falsely answered "Yes" to the question from the Missouri Board of Healing Arts: "Do you have knowledge of any condition or impairment which in any way affects the applicant's ability to practice in a professional competent and safe manner, including but not limited to: (1) a mental, emotional, nervous or sexual disorder; (2) an alcohol or substance abuse disorder or (3) a physical disease or condition?"

82. After Plaintiff's constructive discharge, Defendant made negative statements about Plaintiff to one or more prospective employers, including falsely stating that Dr. Razjouyan had anger issues, did not get along with people, and had problems with professionalism.

83. Defendant's statements to one or more prospective employers have hindered Plaintiff from obtaining gainful employment.

84. On information and belief, on at least one occasion, Defendant's false statements led a prospective employer to retract an offer of employment.

85. Plaintiff's protected activity was a motivating factor in Defendant's above actions.

86. Defendant's actions constituted retaliation and were in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

87. Defendant St. Louis University School of Medicine's actions have caused Plaintiff Razjouyan to suffer lost compensation and benefits of employment.

88. Defendant St. Louis University School of Medicine's actions have caused Plaintiff Razjouyan to suffer emotional distress and mental anguish.

89. Defendant St. Louis University School of Medicine's actions have caused Plaintiff Razjouyan to incur costs and attorneys' fees.

90. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, awarding lost wages and benefits, front wages and/or reinstatement, emotional distress damages, compensatory damages, punitive damages, pre-and-post judgment interest, and attorney's fees and costs, as well as any other relief that this Court should find necessary and proper.

## Count III: Defamation

91. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

92. As described above, Defendant published knowingly false statements that caused Plaintiff damage.

93. After Plaintiff's constructive discharge, Defendant falsely answered "Yes" to the question from the Missouri Board of Healing Arts: "Do you have knowledge of any condition or impairment which in any way affects the applicant's ability to practice in a professional competent and safe manner, including but not limited to: (1) a mental, emotional, nervous or sexual disorder; (2) an alcohol or substance abuse disorder or (3) a physical disease or condition?"

94. Defendant's answer created a roadblock for Plaintiff to receive her medical license in the State of Missouri.

95. Defendant St. Louis University School of Medicine's actions have caused Plaintiff Razjouyan to suffer lost compensation and benefits of employment.

96. Defendant St. Louis University School of Medicine's actions have caused Plaintiff Razjouyan to suffer emotional distress and mental anguish.

97. Defendant St. Louis University School of Medicine's actions have caused Plaintiff Razjouyan to incur costs and attorneys' fees.

98. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, awarding lost wages and benefits, front wages and/or reinstatement, emotional distress damages, compensatory damages, punitive damages, pre-and-post judgment interest, and attorney's fees and costs, as well as any other relief that this Court should find necessary and proper.

## JURY DEMAND

99. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

**KENNEDY HUNT, P.C.**

*/s/ Nicole A. Matlock*
Nicole A. Matlock, #66894MO
4500 West Pine Blvd.
St. Louis, MO, 63108
Phone: (314) 872-9041
Fax:    (314) 872-9043
nmatlock@kennedyhuntlaw.com
**ATTORNEYS FOR PLAINTIFF**